# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEO WOLF, Jr., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 11-1299-JWL |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.   Background**

Plaintiff protectively applied for both SSD and SSI on February 24, 2009, alleging disability beginning December 31, 2005.  (R. 14, 65-68).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an

Administrative Law Judge (ALJ). (R. 14, 65-68, 78-79). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Melvin B. Werner on October 1, 2010. (R. 14, 30-64). At the hearing, testimony was taken from Plaintiff and from a vocational expert. Id. After consultation, Plaintiff's counsel amended the alleged onset date to February 18, 2009. (R. 36).

ALJ Werner issued his decision on November 19, 2010, finding that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date; that Plaintiff has severe impairments including degenerative disc disease, history of cervical spine fusion, diabetes mellitus with neuropathy, and obesity; and that Plaintiff's condition does not meet or medically equal the severity of a Listed Impairment. (R. 14-23). He determined that Plaintiff has the residual functional capacity (RFC) to perform a range of sedentary work limited by an inability to climb ladders, ropes, and scaffolds; the ability to perform all other postural maneuvers only occasionally; the ability to finger, feel, and work overhead only occasionally but with no overhead reaching; and no concentrated exposure to temperature extremes or vibration.

In assessing RFC, the ALJ evaluated the credibility of Plaintiff's allegations of symptoms resulting from his impairments, and determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. 18), but that "claimant's allegations of limitations are credible to the extent he is reduced to a level of work as outlined herein." (R. 19). He evaluated the

opinion evidence and accorded "some weight" to the opinions of the nonexamining state agency consultants, "little weight" to the "other" health care provider opinion of Mr. Barker, OTR/L (Occupational Therapist Registered/Licensed), and "some weight" to the third party opinion of Shirley Barrett.  (R. 21).

The ALJ determined that Plaintiff is unable to perform his past relevant work, but that considering his age, education, work experience, and the RFC assessed he is able to perform jobs existing in significant number in the national economy represented by such jobs as a business services cutter-paster and a photo finisher hand mounter.  (R. 21-22). Therefore, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Act since February 18, 2009, the alleged onset date, and he denied Plaintiff's applications.  (R. 23).

Plaintiff requested Appeals Council review of the ALJ's decision, provided a representative brief, and submitted additional medical evidence for the Council's consideration.  (R. 8-10, 308-10, 751-55).  The Appeals Council made the representative brief and the additional evidence a part of the administrative record and considered that information when deciding whether to review the decision.  (R. 1-6).  Nevertheless, it determined that "this information does not provide a basis for changing the Administrative Law Judge's decision" (R. 2), found no reason under Social Security Administration rules to review the decision, and denied Plaintiff's request for review.  (R. 1).  Therefore, the ALJ's decision became the final decision of the Commissioner.  (R. 1);

Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff timely filed this case, seeking judicial review of the Commissioner's decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial review as provided in section 405(g)"). Section 405(g) provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v.

Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, Plaintiff makes but one claim of error.  He claims that the ALJ failed to conduct the analysis mandated by Social Security Ruling (SSR) 96-8p, and thereby performed an arbitrary assessment of RFC.  The Commissioner argues that the ALJ made his RFC assessment based upon all of the relevant record evidence, that the assessment is supported by substantial record evidence, and that an ALJ is not required to provide a

pinpoint citation to medical evidence for each RFC finding. The court agrees with the Commissioner, and finds that Plaintiff has shown no error in the ALJ's RFC assessment.

## III.    Residual Functional Capacity Assessment

Plaintiff points out that SSR 96-8p requires that "RFC assessment 'must include a narrative discussion describing how the evidence supports each conclusion, cit[ing[1]] specific medical facts . . . and nonmedical evidence,'" and "must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and that an ALJ must consider and address medical source opinions, and where the RFC assessed conflicts with such an opinion must explain why the opinion was not adopted. (Pl. Br. 8) (quoting SSR 96-8p). He points to Tenth Circuit law requiring that an "ALJ's decision must be adequately articulated so that it is capable of meaningful review," that the ALJ must "carefully consider[] all of the relevant evidence and link[] his findings to specific evidence," and that "[i]t is not enough for the ALJ to only discuss the evidence in a general manner, while failing to relate that evidence to his conclusions." (Pl. Br. 8-9) (citing Cruse v. Dep't of Health & Human Servs., 49 F.3d 614, 618 (10th Cir. 1995); and Spicer v. Barnhart, 64 F. App'x 173, 177-78 (10th Cir. 2003)).

Plaintiff argues that in this case, the "ALJ's RFC is not explicitly related to any specific medical evidence or testimony," and the ALJ did not "provide any type of

---

[1]Plaintiff's Brief contains a typographical error in its quotation of SSR 96-8p, but the court has corrected it above. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2012).

reasonable narrative discussion as to how the medical evidence supports his arbitrary conclusions." Id. at 9.  Plaintiff summarized the opinions of Mr. Barker and the state agency nonexamining consultants and the ALJ's discussion of those opinions, and concluded, "Thus, the ALJ did not give substantial weight in any area to any of the [medical source] opinions contained in the record.  Despite this, the ALJ made an RFC finding that Wolf had the severe impairments of degenerative disc disease of the lumbar spine, history of cervical spine fusion, diabetes mellitus with neuropathy and obesity, that necessitated sedentary exertional restrictions." Id. at 10-11.  Plaintiff asserts that the ALJ did not cite to any evidence that supports a finding that Plaintiff can perform sedentary work on a full-time basis, and concludes that the "ALJ never offered any rationale or explanation indicating why the objective evidence or diagnoses would support" his RFC conclusion.  Id. at 12.

As noted above, the Commissioner argues that the ALJ made his RFC assessment based upon all of the relevant record evidence, that his assessment is supported by substantial record evidence, and that an ALJ is not required to provide a pinpoint citation to medical evidence for each RFC finding.  The Commissioner argues that ALJ discussed the "specific evidence upon which he relied in making his RFC assessment." (Comm'r Br. 18) (citing medical evidence tending to support the ALJ's discussion).  He argues that the ALJ also explained why his RFC assessment was more limiting than the RFC suggested by the state agency nonexamining consultants.  Id. at 19.

**A.    The ALJ's RFC Assessment**

In his RFC discussion, the ALJ summarized Plaintiff's allegations, and his medical treatment records and history. He discussed the course of Plaintiff's treatment for degenerative disc disease and diabetes, his motor vehicle accident on February 18, 2009, and his course of treatment thereafter, and the consultative examination and report performed for the agency by Dr. Mancao. (R. 18-19). The ALJ next discussed Plaintiff's allegations and the record evidence particularly as it relates to the credibility of Plaintiff's allegations of symptoms. Id. 19-21. Finally, the ALJ discussed the opinion evidence and explained the weight accorded to each opinion, and the reasons for that weight. (R. 21). In his RFC assessment the ALJ referred to Plaintiff's disability reports and hearing testimony and specifically cited to evidence contained in Exhibits 4F, 6F, 8F, 10F, 17F, 13F, 12E, 15F, 29F, 22F, 11F, 31F, 27F, 29F, 6E, and 13E. (R. 18-21, passim). Moreover, he noted the evidence regarding Plaintiff's treatment for degenerative disc disease, cervical spine fusion, and diabetes mellitus contained in Exhibits 1F-8F, 12F-27F, and 32F-40F (R. 18), and stated that his RFC assessment was made "[a]fter a thorough review of the evidence of record including Exhibits 1E-23E and 1F-40F, the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence." (R. 21).

As relevant to his RFC assessment, the ALJ provided the following explanation:

> Based upon consideration of the record as a whole, the evidence supports that despite his impairments, the claimant remains capable of performing work consistent with the above residual functional capacity.

9

> Due to his physical impairments, the claimant is limited to a range of sedentary work. Due to the claimant's symptoms of pain, it is reasonable to conclude that he is limited to work requiring lifting and/or carrying 10 pounds occasionally and only nominal weight frequently. Even though the claimant states he has problems being on his feet, no physician has prescribed any type of assistive device. In fact, a physical examination on September 15, 2009 indicated that while the claimant walked on his heels most of the time, the strength in his feet was 5/5 bilaterally. (Exhibit 13F/5-7 [(R. 434-36)]). Thus, the evidence supports a finding that the claimant could stand and/or walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. However, in order to prevent exacerbation of pain and as precautionary measures, the claimant could not perform work that requires does not require [sic] climbing on ladders, ropes or scaffolds; no more than occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching or crawling; occasional fingering and feeling; no more than occasional overhead work and no overhead reaching; and no concentrated exposure to temperature extremes or vibration.
>
> * * *
>
> Although the claimant has alleged symptoms of pain, his doctors have not imposed any restrictions against sitting. While the claimant testified that he could not sit very long, he reported on a <u>Function Report- Adult</u> near the time of filing that his hobbies include watching television and talking on the phone, which are sedentary activities (Exhibit 12E/9 [(R. 245)]). Similarly, the medical evidence of record does not support that the claimant is as limited in standing and walking as he reports. A MRI of the lumbar spine conducted October 27, 2009 revealed some degenerative changes in the lower lumbar spine (Exhibit 17F/8 [(R. 484)]). However, a neurologic examination conducted as recently as January 8, 2010 noted that sensation and gait were normal and cranial nerves were grossly intact. Further, no clubbing, cyanosis or edema was noted (Exhibit 15F/9 [(R. 462)]). However, due to the claimant's complaints of pain with continued standing, the claimant's residual functional capacity has been reduced to allow standing and walking for 2 hours in an 8-hour day. In addition, his residual functional capacity for lifting is limited to a sedentary level to accommodate his symptoms of pain.

(R. 19-20).

**B.**   **Analysis**

In light of the ALJ's summary and consideration of the record evidence as cited and quoted above, the court is at a loss to ascertain the basis for Plaintiff's assertions that the ALJ did not relate his RFC to any record evidence, that the ALJ did not provide any type of narrative discussion of how the evidence supports his RFC, or that the ALJ did not cite any evidence that supports a finding that Plaintiff can perform sedentary work on a full-time basis.  Even the most casual reading of the decision reveals that the ALJ related his RFC to the record evidence, that he cited evidence supporting his determination that Plaintiff can perform full-time sedentary work, and that he provided a "narrative discussion describing how the evidence supports each RFC conclusion, citing specific medical facts . . . and nonmedical evidence."  In fact, in the court's experience, the explanation in this decision is clearer and more thorough than many.

The court discerns on closer examination that Plaintiff is making the distinction that the ALJ did not specifically relate <u>medical evidence</u> to his RFC conclusions, did not explain how the <u>medical evidence</u> supports his conclusions, and did not offer any rationale or explanation indicating why the <u>objective evidence</u>[2] <u>or diagnoses</u> would support the RFC conclusions.  It is important to note that Plaintiff does not point to record evidence which was ignored by the ALJ and he does not assert error in the ALJ's findings of fact or in his weighing of the medical opinions.  He merely asserts that the ALJ gave

---

[2]In context, the court understands Plaintiff's reference to "objective evidence" as a reference to medical evidence such as signs, symptoms, and laboratory findings, medically acceptable clinical and laboratory diagnostic techniques, and judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis.

"little weight" to Mr. Barker's opinion and "some weight" to the opinions of the state agency nonexamining consultants, and concludes that "[t]hus the ALJ did not give substantial weight in any area to any of the [(medical source)] opinions contained in the record." (Pl. Br. 11). He then implies that having discounted in some measure all of the record medical source opinions, it would have been impossible for the ALJ to properly determine the severity of Plaintiff's impairments or to determine that Plaintiff could perform work activities at the sedentary exertion level. Id. ("Despite [having discounted all of the medical source opinions], the ALJ made an RFC finding that Wolf had . . . severe impairments . . . that necessitated sedentary exertional restrictions.").

As the Commissioner argues, this court clarified more than a year ago that the narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

Further, as the court's discussion above of the ALJ's RFC assessment reveals, in this case the ALJ did explain his RFC assessment in relation to the medical evidence. He

specifically explained the weight he accorded the medical opinions of the state agency nonexamining consultants and the other medical source opinion of Mr. Barker. (R. 21). He discounted Mr Barker's opinion because it is inconsistent with Plaintiff's treatment notes, Plaintiff's reports, and Mr. Barker's examination results, and because Mr. Barker is not an acceptable medical source. Id. With regard to the state agency consultants' opinions, he stated that "the residual functional capacity in this decision is more limiting based upon additional medical evidence of record and testimony. This assessment is more restrictive than that of the State agency medical consultants but is more consistent with the record as a whole." Id. More is not required.

The determination of RFC is an administrative assessment, based on all the evidence of how plaintiff's impairments and related symptoms affect his ability to perform work related activities. SSR 96-5p, West's Soc. Sec. Reporting Serv., 126 (Supp. 2012) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2012) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). Because this assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). In

addition, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

SSR 96-8p, to which Plaintiff appeals in his argument, requires that "[t]he RFC assessment must be based on all of the relevant evidence in the case record," and it provides a list of eleven examples of such relevant evidence, only one of which is specifically a medical opinion ("Medical source statements"), and six of which are evidence <u>other than</u> medical evidence. SSR 96-8p, West's Soc. Sec. Reporting Serv., 147 (Supp. 2011). Consequently, even though all of the medical opinions in the record have been discounted, that fact does not mean, as Plaintiff alleges, that there is insufficient record evidence upon which to base an RFC finding.

Plaintiff has shown no error in the decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 1st day of October 2012, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**